# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4260 | **DATE** | 3/19/2001 |
| **CASE TITLE** | RICHARD LICHTER vs. CASE CORPORATION | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendant's motion to bar [17-1] is denied.

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | date docketed |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| | | date mailed notice |
| LG | courtroom deputy's initials | |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 30

# UNITED STATES DISTRICT COURT,
# NORTHERN DISTRICT OF ILLINOIS,
# EASTERN DIVISION.

| | |
|---|---|
| RICHARD LICHTER, | ) |
| Plaintiff, | ) Case 99 C 4260 |
| v. | ) The Honorable John W. Darrah |
| CASE CORPORATION, | ) |
| Defendants/Third-Party Plaintiff, | ) |
| v. | ) |
| BLINDERMAN CONSTRUCTION Co., | ) |
| Third Party Defendant. | ) |



## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Case Corporation's Motion to Bar the testimony of Plaintiff's expert, a mechanical engineer, pursuant to FED.R.EVID.'s 702 and 703. For the following reasons, the Court DENIES Defendant's Motion.

## LEGAL STANDARD

FED.R.EVID. 702 governs testimony by experts. It states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED.R.EVID. 703 governs the basis of opinion testimony by experts. It states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value is assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Essentially, these rules assign to the trial judge the responsibility of ensuring that all scientific testimony is not only relevant but also reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588, 113 S.Ct. 2786, 2794 (1993). The holding of Daubert has been extended to apply to all expert testimony. *Kumho Tire Company, LTD., v. Carmichael*, 526 U.S. 137, 149, 119 S.Ct. 1167, 1175 (1999).

In determining the reliability of proposed scientific evidence, a court may consider whether a methodology, theory, or technique (1) has been tested, (2) subjected to peer review and publication, (3) has a potential or known rate of error, and (4) has been accepted by the relevant professional community. *Daubert*, 509 U.S. at 593. However, none of these factors is alone dispositive, and the inquiry "envisioned by Rule 702 is ... a flexible one." *Daubert*, 509 U.S. at 593. When assessing the reliabiliy of an engineering expert's testimony, a trial court may consider these factors to the extent relevant, which will depend upon the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Kumho Tire Company, LTD., v. Carmichael*, 526 U.S. 137, 149, 119 S.Ct. 1167, 1175 (1999).

## DISCUSSION

Defendant Case Corporation seeks to bar Plaintiff's liability expert, Andrew Tudor, from testifying because (1) he allegedly lacks the requisite qualifications and (2) his testimony is unreliable.

### *Andrew Tudor's Qualifications*

Defendant raises various objections to Andrew Tudor's qualifications to testify regarding the design, construction, and proper operation of skid steel loaders and attachment coupling devices. Defendant points out that Tudor's relevant experience (prior employment, academic publication, professional society membership, design work, patent registration, and research) does not concern the "design or safety of off-road construction equipment, design or safety of skid steer loaders, or design or safety of couplers or attachment coupling devices used in off-road construction equipment." (Def. Mot. at 7). Defendant further argues that Tudor lacks experience with skid steel loaders, though it admits that Tudor has testified in another case involving skid steel loaders and worked on a second one. In short, Defendant seeks to limit expert testimony to that which comes from experts having extensive experience within the narrow area of skid steel loaders and their coupling devices.

However, the qualifications for expert opinion is not this specific or limited. The *Daubert* standard for determining admissibility of expert scientific testimony does not require particular credentials for an expert witness. *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 590 (7th Cir. 2000). Rather, "[a]nyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness." *Id.*

Tudor has a Bachelor of Science degree in mechanical engineering and a master's degree in

-3-

mechanics and material engineering. Tudor's experience in the field of mechanical engineering is significant. Not only does he belong to numerous mechanical engineering professional societies, he has held various engineering research and design positions. From May, 1975 to December, 1980, he was employed as a mechanical systems project engineer by the Natural Gas Pipeline Company of America. From 1984 to 1988, he was manager for research and development at the Schwinn Bicycle company. From September, 1989 to October, 1997, he was a principal mechanical engineer at Triodyne, Inc. He has previously worked with skid steer loaders involving issues, including defective design, similar to some of the issues in the case at bar.

Defendant's objections are more properly considered as bearing on the weight to be given Tudor's testimony as developed by cross examination at trial or the introduction of other contrary expert testimony. Andrew Tudor is found to be qualified to testify as an expert in this case.

*Reliability of Testimony*

Defendant contends that Tudor's opinions are unreliable since they "were not reached through a verifiable scientific or engineering method." (Def. Mot. 10). Before reaching this argument, it is important to consider the opinions Tudor will be offering at trial. Tudor's testimony will likely resemble the following excerpts drawn from his depositions:

> The case coupler system was defective and unreasonably dangerous because there was insufficient engagement or fit between the bucket attachment and the coupler system.
> ***
> The case coupler system's wedge engagement lacked sufficient durability to withstand normal back drive forces that a user would encounter from a bucket in a fully forward tilt position, resulting in improper force transmission...
> ***
> The case coupler system's levers produce a false positive due to the operator's inability to see wedge engagement even where the coupler levers would appear to be engaged and locked over-center.

***
The subject case skid steer loader lacked a safety device to prevent inadvertent activation of the hand controls operating the bucket.
***
The case skid steel loader provided no warning to remind the user to check the wedge engagement when attaching an implement. (Pl. Res. 3-4).

Defendant raises various objections to Tudor's conclusions based on his "operational studies" employing kinematic and force analysis. However, Defendant does not deny that kinematic and force analysis is "standard engineering procedure" (Tudor Dep. at 81) and is therefore the product of reliable principles and methods that have been accepted by the relevant professional community. The proposed expert opinion evidence is found to be reliable.

## CONCLUSION

For the reasons stated herein, Defendant's Motion to Bar is DENIED.

**IT IS SO ORDERED.**

Date: 3-19-01

John W. Darrah, Judge

United States District Court